# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DORA JEAN MCCORMICK, individually and as personal representative of the estate of Patrick Kenneth McCormick,<br><br>    Plaintiff,<br><br>v.<br><br>SARA C. LISCHYNSKY,<br><br>    Defendant. | Civil Action No.<br>19-10433-FDS |

# MEMORANDUM AND ORDER ON
# DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

This case involves the alleged theft of assets by a former domestic partner. Patrick McCormick was in a relationship with defendant Sara Lischynsky for several years, and apparently she had access to his property and financial accounts during that time. Sometime before 2017, the two broke off their relationship. Patrick committed suicide in February 2017. Lischynsky allegedly then used Patrick's passwords to steal a substantial portion of his assets.

Plaintiff Dora Jean McCormick, Patrick's mother, was later appointed as personal representative of his estate. She has brought suit against Lischynsky, alleging a variety of tort and contract claims, both personally and on behalf of the estate. Jurisdiction is based on diversity of citizenship.

Defendant has moved to dismiss the complaint for failure to state a claim. For the following reasons, the motion will be granted in part and denied in part.

I.      **Background**

   A.      **Factual Background**

The facts are set forth as alleged in the complaint.

At the time of his death, Patrick McCormick was a citizen of Massachusetts. (Compl. ¶ 7). Dora McCormick is a citizen of Maine. (*Id.* ¶ 6).[1] Sara Lischynsky is a citizen of California. (*Id.* ¶ 7).[2]

Patrick and Sara dated for several years before 2017, and they eventually moved in together into a Dorchester apartment. (*Id.* ¶ 12). At some point, the relationship ended, and the two "reached an agreement as to the division of their property and assets." (*Id.* ¶ 13). The terms of that agreement are not alleged in the complaint.

Unfortunately, Patrick suffered from depression. (*Id.* ¶ 14). He committed suicide in February 2017. (*Id.*).

The complaint alleges that after learning of Patrick's death, Sara used her knowledge of "Patrick's personal and confidential information and passwords" to "gain[] access to his property and bank accounts." (*Id.* ¶ 17). She purportedly stole "tens of thousands of dollars" and left Massachusetts for California. (*Id.* ¶¶ 18-19).

Dora was then appointed personal representative of Patrick's estate by the probate court. (*Id.* ¶ 15). She discovered "the theft of her deceased son's property" that left his estate "depleted of its assets." (*Id.* ¶ 20). She alleges both financial harm to the estate and emotional harm to herself that manifested itself in physical injuries. (*Id.* ¶¶ 22, 25).

---

[1] Because Patrick and his mother share the same last name, this memorandum will refer to them by their first names to avoid any confusion.

[2] Plaintiff suggests that Lischynsky recently changed her last name to Cortes. For consistency, this memorandum will refer to defendant by her name as listed on the public docket.

B.   **Procedural Background**

The complaint was filed in this action on June 8, 2018, in the Superior Court. It asserted 15 common-law claims. However, defendant was not served the complaint until February 17, 2019. Defendant timely removed the action to this court on the basis of diversity jurisdiction and then moved to dismiss the complaint for failure to state a claim.

At the motion hearing on May 15, 2019, plaintiff's counsel voluntarily dismissed all claims other than Counts 2, 4, 5, 11, and 12. The remaining claims are promissory estoppel (Count 2); conversion (Count 4); unjust enrichment (Count 5); intentional infliction of emotional distress ("IIED") (Count 11); and negligent infliction of emotional distress ("NIED") (Count 12).[3]

The complaint does not distinguish whether each claim is alleged by Dora in her individual capacity or as a personal representative of Patrick's estate. The Court will read the complaint broadly to allege that all claims are brought by Dora in both her individual and representative capacities.

C.   **Subject-Matter Jurisdiction**

Although plaintiff did not raise the issue, "[i]t is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject-matter jurisdiction." *McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004) (citing *In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir. 1988); Fed. R. Civ. P. 12(h)(3)). As set forth in 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

There is no issue as to diversity of citizenship. However, it was unclear from the face of

---

[3] The complaint labels Count 4 as "Misappropriation/Conversion/Defalcation." Because both parties have elected to treat this as a claim for conversion, the Court will do the same.

the complaint and attached exhibits whether the amount-in-controversy threshold was met. Accordingly, the Court directed defendant, as the removing party, to show why the action should not be remanded to the Superior Court for lack of subject-matter jurisdiction.

After review of defendant's submission, the Court concludes that the jurisdictional threshold requirement has been satisfied. As noted, at the time of removal, the amended complaint asserted 15 counts, including various contract and tort claims. The complaint alleged tort damages "in excess of $25,000." (Compl. ¶ 25). The Civil Cover Sheet attached to the complaint alleged contract damages of exactly $75,000. (Notice of Removal ¶ 7).[4] The amount in controversy therefore appears to be at least $100,000, and remand is not appropriate.[5]

## II.  Legal Standard

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*,

---

[4] If the amount in controversy were exactly $75,000, the statutory requirement would not be met, as the statute requires that the amount exceed that number.

[5] Moreover, the amended complaint also asserted a claim under the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A, which allows plaintiffs to collect attorney's fees as part of their damages. *See* Mass. Gen. Laws ch. 93A, § 9(4). Although "attorney's fees are excluded from the amount-in-controversy determination," there is an exception "when a statute mandates or allows payment of the fees." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001) (citing *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir. 1979)). Therefore, a reasonable estimate of plaintiff's attorney's fees may be added to the amount in controversy.

556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III. Analysis

### A. Promissory Estoppel

Count 2 asserts a claim for promissory estoppel. In order to establish a claim of promissory estoppel under Massachusetts law, a plaintiff must allege that (1) a promisor made a promise which she "should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only be enforcement of the promise." *Neuhoff v. Marvin Lumber and Cedar Co.*, 370 F.3d 197, 203 (1st Cir. 2004). "[A]n action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration." *Id.* (quoting *R.I. Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 850 (1995) (quotation marks omitted)).

As a general matter, not all the terms of a contract must be precisely specified for it to be enforceable. *See id.* (citing *Situation Mgmt. Sys. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000)). The issue here, however, is that the only contract mentioned in the complaint is an "agreement as to the division of [Patrick and Sara's] property and assets." (Compl. ¶ 13). The terms of that agreement are neither alleged in nor attached to the complaint. Therefore, it is impossible to determine what promises, if any, were made by either party.

Moreover, even if there were an oral agreement whereby Patrick and Sara agreed that

each would keep his or her own assets, the complaint fails to allege any action or forbearance in reliance on that promise by Patrick. In the absence of a reliance interest, the promissory estoppel claim must fail. *See Hinchey v. NYNEX Corp.*, 144 F.3d 134, 143-44 (1st Cir. 1998) (affirming district court's grant of summary judgment on promissory estoppel claim where plaintiff failed to establish reliance).

Count 2 will therefore be dismissed. *Cf. Deskos v. Shagoury Ins. Agency, Inc.*, 81 Mass. App. Ct. 1137 (2012) (Table) (affirming trial court's dismissal of breach of contract claim for failure to allege "how the contract was breached," as "the extent and nature of [the contractual] obligations are matters of pure speculation.").

### B. Conversion

Count 4 asserts a claim for conversion. A claim for conversion requires proof that the defendant "intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which [s]he has no right of possession at the time." *In re Brauer*, 452 Mass. 56, 67 (2008) (internal quotation marks, alteration, and citations omitted).[6]

Defendant contends that the claim for conversion must fail because the complaint "fails to plead facts identifying the property at issue and fails to plead facts plausibly suggesting that the money or assets at issue belonged to [Patrick]." (Def. Mem. in Supp. of MTD at 6). However, the complaint alleges that after Patrick and Sara ended their relationship, she

---

[6] The First Circuit has articulated the elements of this tort somewhat differently, holding that a plaintiff must show that:

> (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993).

improperly used Patrick's passwords and account information to steal his assets and refused to return the property after being asked to by Dora. (Compl. ¶¶ 17-20). That clearly states a plausible claim for conversion of the property of the estate. There is, however, no allegation that any property belonging to Dora was converted, and therefore the claim brought by Dora in her individual capacity for conversion will be dismissed.

C. **Unjust Enrichment**

Count 5 asserts a claim for unjust enrichment. Unjust enrichment is the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005). The elements of unjust enrichment are "(1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment of its value." 26 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 68:5 (4th ed. 1993) (cited by *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009)).

At common law, although actions based on contract survived the death of a party, actions based on tort did not. *See Kraft Power Corp. v. Merrill*, 464 Mass. 145, 150 (2013). However, the legislature enacted the Survival Statute, Mass. Gen. Laws ch. 228, § 1, to "abrogate the common law rule." *Id.* at 150 (internal quotation marks and citation omitted). The Survival Statute states as follows:

> In addition to the actions which survive by the common law, the following shall survive:
>
> . . .
>
> (2) Actions of tort (a) for assault, battery, imprisonment or other damage to the

person; (b) for consequential damages arising out of injury to the person and consisting of expenses incurred by a husband, wife, parent or guardian for medical, nursing, hospital or surgical services in connection with or on account of such injury; (c) for goods taken or carried away or converted; or (d) for damage to real or personal property;

. . . .

Mass. Gen. Laws ch. 228, § 1.[7]

An unjust enrichment claim does not survive death where the "gist of the action" sounds in tort. *See Brenner v. Williams-Sonoma, Inc.*, 2016 WL 7785456, at *6 (D. Mass. Jan. 27, 2016). Here, the complaint does not adequately plead the existence of a contract between Patrick and Sara or a quasi-contractual theory such as promissory estoppel. Accordingly, this claim sounds in tort, and therefore Count 5 will be dismissed.

### D. **Intentional and Negligent Infliction of Emotional Distress**

Counts 11 and 12 assert claims for IIED and NIED, respectively. To state a claim for IIED under Massachusetts law, a complaint must allege

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency[,] and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976) (internal quotation marks and citations omitted); *accord Brown v. Hearst Corp.*, 54 F.3d 21, 27 (1st Cir. 1995). Courts apply a "very high" standard to claims of intentional infliction of emotional distress, especially as to the nature of the conduct. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996). "[L]iability

---

[7] Because conversion is one of the enumerated torts in the Survival Statute, that claim survives Patrick's death.

8

cannot be predicated upon 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)).

To state a claim for NIED under Massachusetts law, a complaint must allege

> (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.

*Conley v. Romeri*, 60 Mass. App. Ct. 799, 801 (2004) (citing *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982)). "It is fundamental that there must be a showing of a duty of care owed to the plaintiff, because 'there can be no negligence where there is no duty.'" *Id.* (quoting *McHerron v. Jiminy Peak, Inc.*, 422 Mass. 678, 681 (1996) (alteration omitted)).

Defendant contends that these claims should be dismissed for two reasons. First, she relies on the economic-loss doctrine. (Def. Mem. in Supp. of MTD at 7). "Under this rule, 'purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.'" *Lewis v. Gen. Elec. Co.*, 37 F. Supp. 2d 55, 59 (D. Mass. 1999) (quoting *FMR Corp. v. Bos. Edison Co.*, 415 Mass. 393, 395 (1993)). She reasons that the complaint "seeks recovery for [solely] economic loss—money or property taken—not for property damage or personal injury." (Def. Mem. in Supp. of MTD at 7). However, that misreads the complaint. The complaint specifically alleges that Sara deliberately absconded with the bulk of Patrick's estate, which caused Dora to suffer "severe emotional distress, with physical manifestations thereof." (Compl. ¶ 23). That language, though broadly worded, alleges a "personal injury" sufficient to overcome the economic-loss doctrine at this stage of litigation as to the claims by Dora.

Second, defendant argues that the NIED claim should be dismissed because the

complaint does not adequately allege the existence of a relevant duty. (Def. Mem. in Supp. of MTD at 7-8). "Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy." *O'Sullivan v. Shaw*, 431 Mass. 201, 203 (2000). The complaint alleges that defendant owed a duty to "abide by the standard of the society with respect to . . . protecting the confidential and proprietary passwords and access to [Patrick's] assets." (Compl. ¶¶ 64, 70).

It does not appear that the courts of Massachusetts have found that a defendant can be liable on a negligence theory to a close family member of a decedent for emotional injuries arising out of the theft of the decedent's property. Massachusetts does permit recovery for NIED to a parent who is within the "zone of danger" and witnesses the death of a child. *See, e.g., Cimino v. Milford Keg., Inc.*, 385 Mass. 323, 333 (1982); *see also* Restatement (Third) of Torts § 48 (providing that a person who negligently causes a serious bodily injury to a third person can be liable to a person who perceives the event and is a "close family member"). Massachusetts also permits recovery for emotional distress by a surviving spouse when a hospital or funeral home negligently mishandles a deceased's body. *See, e.g., Kelly v. Brigham & Women's Hosp.*, 51 Mass. App. Ct. 297, 302 (2001). But no Massachusetts court appears to have extended that principle beyond personal injury and the mishandling of a corpse to theft or other loss of property.

There may well be good reasons to impose such a duty in appropriate circumstances. But it is not the role of this Court, sitting in diversity, to plow new ground in Massachusetts tort law. Accordingly, and in the absence of a recognized legal duty, the NIED claim must fail.

Finally, to the extent the complaint seeks to assert a claim for IIED on behalf of the

estate, it also necessarily fails. The actions alleged to have been extreme and outrageous occurred after Patrick's death, and therefore could not have caused him emotional distress or physical harm. Furthermore, an estate is an artificial entity, and can suffer neither emotional nor physical injury.

Accordingly, the motion to dismiss will be denied as to Count 11, to the extent that the claim is brought by Dora individually; granted as to Count 11, to the extent that the claim is brought on behalf of the estate; and granted as to Count 12.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED as to Counts 2 (promissory estoppel), 5 (unjust enrichment), and 12 (negligent infliction of emotional distress); GRANTED as to Count 4 (conversion), to the extent that the claim is brought by Dora Jean McCormick individually; GRANTED as to Count 11 (intentional infliction of emotional distress), to the extent that the claim is brought on behalf of the estate of Patrick Kenneth McCormick; and is otherwise DENIED.

**So Ordered.**

Dated: July 30, 2019

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge